# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Federal Trade Commission, | ) |
| | ) Case No. SACV09-401 CJC (MLGx) |
| Plaintiff, | ) |
| | ) **STIPULATED FINAL ORDER** |
| v. | ) **FOR PERMANENT NJUNCTION** |
| | ) **AND SETTLEMENT OF** |
| | ) **CLAIMS AS TO** |
| | ) **STEVEN OSCHEROWITZ** |
| Federal Loan Modification | ) |
| Law Center, LLP, et al. | ) Judge: Hon. Cormac J. Carney |
| | ) |
| Defendants. | ) |

Plaintiff Federal Trade Commission ("FTC") commenced this civil action on April 3, 2009, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to obtain preliminary and permanent injunctive and other equitable relief for Defendants' violations of Section 5 of the FTC Act, 15 U.S.C. § 45, in connection with the marketing and sale of mortgage loan modification and foreclosure relief services. The FTC subsequently filed an amended complaint on June 24, 2009, naming Defendants Federal Loan Modifications, SBSC Corporation, and Venture Legal Support, PLC and Relief Defendants Legal Turn, LLC and MGO Capital. The Court entered a Preliminary Injunction Order ("PI Order") in this case enjoining Defendants from, among other things, collecting advance fees from

consumers, from making certain representations about their services, and from disposing of assets outside the ordinary course of business. The FTC and Defendant Steven Oscherowitz stipulate to the entry of this Final Order for Permanent Injunction and Settlement of Claims. Nothing in this order supercedes prohibitions on Defendant Steven Oscherowitz's conduct or his obligations pursuant to any other administrative or judicial order resolving violations of the FTC Act or other laws including but not limited to *In re* Universal Merchants Inc., et al, 123 F.T.C. 149 (Jan. 23, 1997) (consent order).

## FINDINGS

By stipulation of the parties and being advised of the premises, the Court finds:

1. This is an action by the FTC brought pursuant to Sections 5 and 13(b) of the FTC Act, 15 U.S.C. §§ 45 and 57(b). The Amended Complaint seeks both permanent injunctive relief and consumer redress for the Defendants' alleged deceptive acts or practices in connection with the marketing and sale of mortgage loan modification and foreclosure relief services.

2. The FTC has authority under Sections 13(b) of the FTC Act to seek the relief it has requested, and the Amended Complaint states a claim upon which relief can be granted against Defendant Steven Oscherowitz.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1345, and 15 U.S.C. §§ 45(a) and 53(b) and has jurisdiction over the Defendant. Venue in the Central District of California is proper.

4. The activities of Defendant Steven Oscherowitz, as alleged in the Amended Complaint, are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

5. Defendant Steven Oscherowitz enters into this Order freely and without coercion and acknowledges that he has read, understands, and is prepared to abide by, the provisions of this Order.

6. By agreeing to this Order, Defendant Steven Oscherowitz does not admit any of the allegations set forth in the Amended Complaint, other than the jurisdictional facts, merely by stipulating and agreeing to the entry of this Order.

7. Defendant Steven Oscherowitz waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. Defendant Steven Oscherowitz also waives any claim that he may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action to the date of this Order. Each party shall bear its own costs and attorneys fees.

8. This action and the relief awarded herein, are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

9. Entry of this Order is in the public interest.

## DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

1. "***Assisting others***" includes, but is not limited to, providing any of the following goods or services to another person: (A) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (B) formulating or providing, or arranging for the formulation or provision of, any telephone sales script or any other marketing material, including but not limited to, the text of any Internet website, email, or other electronic communication; (C) providing names of, or assisting in the generation of, potential customers; (D) performing marketing services of any kind; or (E) acting or serving as an owner, officer, director, manager, or principal of any entity.

2. "*Credit*" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

3. "*Debt relief good or service*" means any good, service, plan or program, including debt management plans, debt settlement, debt negotiation, and for-profit credit counseling, represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors, servicers, or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor, servicer, or debt collector.

4. "*Defendant*" means Steven Oscherowitz individually.

5. "*Financial related good or service*" means any good, service, plan, or program that is represented, expressly or by implication, to (A) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, credit, debit, or stored value cards; (B) improve, or arrange to improve, any consumer's credit record, credit history, or credit rating; (C) provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating; (D) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, a loan or other extension of credit; (E) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving, debt relief goods or services; (F) provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more secured creditors, servicers, or debt collectors.

6. **"*Federal homeowner relief or financial stability program*"** means any program (including its sponsoring agencies, telephone numbers, and Internet websites) operated or endorsed by the United States government to provide relief to homeowners or stabilize the economy, including but not limited to (A) the Making Home Affordable Program; (B) the Financial Stability Plan; (C) the Troubled Asset Relief Program and any other program sponsored or operated by the United States Department of the Treasury; (D) the HOPE for Homeowners program, any program operated or created pursuant to the Helping Families Save Their Homes Act, and any other program sponsored or operated by the Federal Housing Administration; or (E) any program sponsored or operated by the United States Department of Housing and Urban Development ("HUD"), the HOPE NOW Alliance, the Homeownership Preservation Foundation, or any other HUD-approved housing counseling agency.

I. **"*For-profit*"** means any activity organized to carry on business for the profit of the entity engaging in the activity or that of its members.

8. **"*Material fact*"** means any fact that is likely to affect a person's choice of, or conduct regarding, goods or services.

9. **"*Mortgage loan modification or foreclosure relief service*"** means any good, service, plan, or program that is represented, expressly or by implication, to assist a consumer in any manner to (A) stop, prevent, or postpone any home mortgage or deed of trust foreclosure sale; (B) obtain or arrange a modification of any term of a home loan, deed of trust, or mortgage; (C) obtain any forbearance from any mortgage loan holder or servicer; (D) exercise any right of reinstatement of any mortgage loan; (E) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the owner of property sold at foreclosure may

cure his or her default or reinstate his or her obligation; (F) obtain any waiver of an acceleration clause contained in any promissory note or contract secured by a deed of trust or mortgage on a residence in foreclosure or contained in that deed of trust; (G) obtain a loan or advance of funds that is connected to the consumer's home ownership; (H) avoid or ameliorate the impairment of the consumer's credit record, credit history, or credit rating that is connected to the consumer's home ownership; (I) save the consumer's residence from foreclosure; (J) assist the consumer in obtaining proceeds from the foreclosure sale of the consumer's residence; (K) obtain or arrange a pre-foreclosure sale, short sale, or deed-in-lieu of foreclosure; (L) obtain or arrange a refinancing, recapitalization, or reinstatement of a home loan, deed of trust, or mortgage; (M) audit or examine a consumer's mortgage or home loan application; or (N) obtain, arrange, or attempt to obtain or arrange any extension of the period within which the renter of property sold at foreclosure may continue to occupy the property. The foregoing shall include any manner of claimed assistance, including, but not limited to, debt, credit, budget, or financial counseling; receiving money for the purpose of distributing it to creditors; contacting creditors or servicers on behalf of the consumer; and giving advice of any kind with respect to filing for bankruptcy.

    10.    "***Person***" means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

    11.    "***Servicer***" means any beneficiary, mortgagee, trustee, loan servicer, loan holder, or any entity performing loan or credit account administration or processing services and/or its authorized agents.

    12.    "***Telemarketing***" means any plan, program, or campaign (whether or not covered by the Telemarketing Rule, 16 C.F.R. Part 310) that is conducted to

induce the purchase of goods or services or the payment of money by means of the use of one or more telephones.

## ORDER

## BAN ON MORTGAGE LOAN MODIFICATION AND FORECLOSURE RELIEF SERVICES

**I.     IT IS THEREFORE ORDERED** that Defendant, whether acting directly or through any other person, is permanently restrained and enjoined from

    A.     Advertising, marketing, promoting, offering for sale, or selling any mortgage loan modification or foreclosure relief service; and

    B.     Assisting others engaged in advertising, marketing, promoting, offering for sale, or selling any mortgage loan modification or foreclosure relief service.

## BAN ON TELEMARKETING

**II.    IT IS FURTHER ORDERED** that Defendant, whether acting directly or through any other person, is permanently restrained and enjoined from telemarketing, or assisting others engaged in telemarketing any good or service.

## PROHIBITED REPRESENTATIONS RELATING TO FINANCIAL RELATED GOODS AND SERVICES

**III.   IT IS FURTHER ORDERED** that Defendant and his successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in

connection with the advertising, marketing, promotion, offering for sale or sale of any financial related good or service, are hereby permanently restrained and enjoined from:

    A.    Misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

        1.    The terms or rates that are available for any loan or other extension of credit, including but not limited to:

           (a)    closing costs or other fees;

           (b)    the payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), or finance charge; the loan amount, the amount of credit, the draw amount, or outstanding balance; the loan term, the draw period, or maturity; or any other term of credit;

           (c)    the savings associated with the credit;

           (d)    the amount of cash to be disbursed to the borrower out of the proceeds, or the amount of cash to be disbursed on behalf of the borrower to any third parties;

           (e)    whether the payment of the minimum amount specified each month covers both interest and principal, and whether the credit has or can result in negative amortization;

           (f)    that the credit does not have a prepayment penalty or that no prepayment penalty and/or other fees or costs will be incurred if the consumer subsequently refinances; and

           (g)    that the interest rate(s) or annual percentage rate(s) are fixed rather than adjustable or adjustable rather than fixed;

2. That any person can improve any consumer's credit record, credit history, or credit rating by permanently removing negative information from the consumer's credit record, credit history, or credit rating, even where such information is accurate and not obsolete;

3. Any person's ability to improve or otherwise affect a consumer's credit record, credit history, or credit rating or ability to obtain credit;

4. Any aspect of any debt relief good or service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in such debt relief good or service; the amount of time before which a consumer will receive settlement of the consumer's debts; or the reduction or cessation of collection calls; and

5. That a consumer will receive legal representation;

B. Advertising or assisting others in advertising credit terms other than those terms that actually are or will be arranged or offered by a creditor or lender.

**PROHIBITED REPRESENTATIONS RELATING TO ANY GOODS OR SERVICES**

**IV.    IT IS FURTHER ORDERED** that Defendant and his successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale or sale of any good, service, plan, or program, are hereby permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, any material fact, including but not limited to:

A. Any material aspect of the nature or terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

B. That any person is affiliated with, endorsed or approved by, or otherwise connected to any other person, government entity, any federal homeowner relief or financial stability program, or any other program;

C. The total costs to purchase, receive, or use, and the quantity of, the good or service;

D. Any material restriction, limitation, or condition to purchase, receive, or use the good or service; and

E. Any material aspect of the performance, efficacy, nature, or characteristics of the good or service.

## PROHIBITIONS ON USE OF CUSTOMER INFORMATION

**V.** **IT IS FURTHER ORDERED** that Defendant and his successors, assigns, officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are permanently restrained and enjoined from:

A. disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with the

advertising, marketing, promotion, offering for sale or sale of any mortgage loan modification or foreclosure relief service, and

  B. failing to dispose of such customer information in all forms in his possession, custody, or control within thirty (30) days after entry of this Order. Disposal shall be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practically be read or reconstructed.

  C. **Provided, however,** that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by a law, regulation, or court order.

## MONETARY RELIEF

**VI. IT IS FURTHER ORDERED** that:

  A. Judgment is hereby entered against the Defendant, jointly and severally, in the amount of eleven million five hundred twenty-six thousand two hundred and seventy-four dollars ($11,526,274);

  B. The Defendant hereby assigns to the Commission, without any encumbrances, all rights and claims to, and the right to pursue any chose in action to recover, any money or assets owed to them as of the date of entry of this Order by any Defendant or Relief Defendant named in this civil action, or their officers, agents, servants, employees, and all persons and entities in active concert or participation with them;

  C. Any funds received by the FTC pursuant to this Section shall be deposited into a fund administered by the FTC or its agent to be used for equitable relief, including but not limited to consumer redress and any attendant expenses for the administration of any redress funds. In the event that direct redress to

consumers is wholly or partially impracticable or funds remain after redress is completed, the FTC may apply any remaining funds for such other equitable relief, including but not limited to consumer information remedies, as the FTC determines to be reasonably related to the practices alleged in the Amended Complaint. Any funds not used for such equitable relief shall be deposited to the U.S. Treasury as equitable disgorgement. Defendant shall have no right to challenge the FTC's choice of remedies or the manner of distribution.

      D.     The Defendant relinquishes all dominion, control, and title to the funds paid to the fullest extent permitted by law. The Defendant shall make no claim to or demand for return of the funds, directly or indirectly, through counsel or otherwise.

      E.     Defendant agrees that the facts as alleged in the Amended Complaint filed in this action shall be taken as true without further proof in any bankruptcy case or subsequent civil litigation pursued by the Commission to enforce its rights to any payment or money judgment pursuant to this Order, including but not limited to a nondischargeability complaint in any bankruptcy case. Defendant further stipulates and agrees that the facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and that this Order shall have collateral estoppel effect for such purposes.

      F.     The judgment entered pursuant to this Section is equitable monetary relief, solely remedial in nature, and not a fine, penalty, punitive assessment or forfeiture.

      G.     Upon request, the Defendant is hereby required, in accordance with 31 U.S.C. § 7701, to furnish to the FTC his tax identification number, which shall be

used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

H. Pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may furnish a consumer report concerning Defendant to the FTC, which shall be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

## COOPERATION WITH FTC

**VII. IT IS FURTHER ORDERED** that the Defendant shall, in connection with this action or any subsequent investigation or litigation related to or associated with the transactions or the occurrences that are the subject of the Amended Complaint, cooperate in good faith with the FTC and appear at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences, pretrial discovery, review of documents, and for such other matters as may be reasonably requested by the FTC. If requested in writing by the FTC, the Defendant shall appear and provide truthful testimony in any trial, deposition, or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Amended Complaint, without the service of a subpoena, *provided, however,* that the Defendant shall be entitled to receive any witness fees and expenses allowable pursuant to Federal Rule of Civil Procedure 45.

## COMPLIANCE MONITORING

**VIII. IT IS FURTHER ORDERED** that, for the purpose of (i) monitoring and investigating compliance with any provision of this Order, and (ii) investigating the accuracy of Defendant's financial statements upon which the FTC's agreement to this Order is expressly premised:

A. Within ten (10) days of receipt of written notice from a representative of the FTC, the Defendant shall submit additional written reports, which are true

and accurate and sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and provide entry during normal business hours to any business location in Defendant's possession or direct or indirect control to inspect the business operation;

  B. In addition, the FTC is authorized to use all other lawful means, including but not limited to:

    1. obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 36, 45 and 69;

    2. posing as consumers and suppliers to the Defendant, his employees, or any other entity managed or controlled in whole or in part by the Defendant, without the necessity of identification or prior notice; and

  C. The Defendant shall permit representatives of the FTC to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order.  The person interviewed may have counsel present.

  D. ***Provided however,*** that nothing in this Order shall limit the FTC's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## COMPLIANCE REPORTING

**IX.** **IT IS FURTHER ORDERED** that in order that compliance with the provisions of this Order may be monitored:

  A. For a period of ten (10) years from the date of entry of this Order,

    1. Defendant shall notify the FTC of the following:

     a. Any changes in Defendant's residence, mailing addresses, and telephone numbers, within ten (10) days of the date of such change;

     b. Any changes in Defendant's employment status (including self-employment), and any change in Defendant's ownership in any business entity, within ten (10) days of the date of such change.  Such notice shall include the name and address of each business that Defendant is affiliated with, employed by, creates or forms, or performs services for; a detailed description of the nature of the business; and a detailed description of Defendant's duties and responsibilities in connection with the business or employment; and

     c. Any changes in Defendant's name or use of any aliases or fictitious names;

  2. The Defendant shall notify the FTC of any changes in structure of any corporate defendant or any business entity that Defendant directly or indirectly controls, or has an ownership interest in, that may affect compliance obligations arising under this Order, including but not limited to:  incorporation or other organization; a dissolution, assignment, sale, merger, or other action; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; or a change in the business name or address, at least thirty (30) days prior to such change, *provided* that, with respect to any proposed change in the business entity about which Defendant learns less than thirty (30) days prior to the date such action is to take place, Defendant shall notify the FTC as soon as is practicable after obtaining such knowledge.

 B. One hundred eighty (180) days after the date of entry of this Order and annually thereafter for a period of ten (10) years, the Defendant shall provide a written report to the FTC, which is true and accurate and sworn to under penalty of

perjury, setting forth in detail the manner and form in which he has complied and is complying with this Order. This report shall include, but not be limited to:

       1.    Defendant's then-current residence address, mailing addresses, and telephone numbers;

       2.    Defendant's then-current employment status (including self-employment), including the name, addresses, and telephone numbers of each business that Defendant is affiliated with, employed by, or performs services for; a detailed description of the nature of the business; and a detailed description of Defendant's duties and responsibilities in connection with the business or employment; and

       3.    Any other changes required to be reported under Subsection A of this Section.

       4.    A copy of each acknowledgment of receipt of this Order, obtained pursuant to the Section titled "Distribution of Order;" and

       5.    Any other changes required to be reported under Subsection A of this Section.

C.    Defendant shall notify the FTC of the filing of a bankruptcy petition by Defendant within fifteen (15) days of filing.

D.    For the purposes of this Order, the Defendant shall, unless otherwise directed by the FTC's authorized representatives, send by overnight courier all reports and notifications required by this Order to the FTC, to the following address:

       Associate Director for Enforcement
       Federal Trade Commission
       600 Pennsylvania Avenue, N.W., Room NJ-2122
       Washington, D.C. 20580
       RE:   *FTC v. Federal Loan Modification Law Center*, Case No.
                SACV09-401 CJC (MLGx) (C.D. Ca.)

*Provided* that, in lieu of overnight courier, Defendant may send such reports or notifications by first-class mail, but only if Defendant contemporaneously sends an electronic version of such report or notification to the FTC at: DEBrief@ftc.gov.

  E. For purposes of the compliance reporting and monitoring required by this Order, the FTC is authorized to communicate directly with Defendant .

## RECORD KEEPING PROVISIONS

**X.** **IT IS FURTHER ORDERED** that, for a period of thirteen (13) years from the date of entry of this Order, in connection with any business where Defendant is the majority owner of the business or directly or indirectly manages or controls the business, Defendant and his agents, employees, officers, corporations, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain the following records:

  A. Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

  B. Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

  C. Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

  D. Complaints and refund requests (whether received directly, indirectly, or through any third party) and any responses to those complaints or requests;

  E. Copies of all sales scripts, training materials, advertisements, or other marketing materials; and

  F. All records and documents necessary to demonstrate full compliance with each provision of this Order, including but not limited to, copies of acknowledgments of receipt of this Order required by the Sections titled "Distribution of Order" and "Acknowledgment of Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled "Compliance Reporting."

## DISTRIBUTION OF ORDER

**XI.** **IT IS FURTHER ORDERED** that, for a period of ten (10) years from the date of entry of this Order, Defendant shall deliver copies of the Order as directed below:

  A. Defendant as Control Person:  For any business that Defendant controls, directly or indirectly, or in which Defendant has a majority ownership interest, Defendant must deliver a copy of this Order to (1) all principals, officers, directors, and managers of that business; (2) all employees, agents, and representatives of that business who engage in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting."  For current personnel, delivery shall be within five (5) days of service of this Order upon such Defendant.  For new personnel, delivery shall occur prior to them assuming their responsibilities.  For any business entity resulting from any change in structure set forth in Subsection A.2 of the Section titled "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in structure.

B.      Defendant as employee or non-control person:  For any business where an Individual Defendant is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Order, such Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

C.      Defendant must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Section.

**ACKNOWLEDGMENT OF RECEIPT OF ORDER**

**XII.   IT IS FURTHER ORDERED** that Defendant, within five (5) business days of receipt of this Order as entered by the Court, must submit to the FTC a truthful sworn statement acknowledging receipt of this Order.

/

/

/

/

/

/

/

/

/

**RETENTION OF JURISDICTION**

**XIII. IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO STIPULATED AND AGREED**:

**SO STIPULATED**:

_____

Steven Oscherowitz, Defendant

Pro Se

**FOR THE PLAINTIFF**

**FEDERAL TRADE COMMISSION**

_____

LAURA M. SULLIVAN

JAMES L. CHEN

LEAH E. FRAZIER

Attorneys

Federal Trade Commission

Washington, D.C.  20580

Tel:  (202) 326-3327 (Sullivan); (-3332) Frazier; (-2659) Chen

Fax: (202) 326-3768

Email:  lsullivan@ftc.gov; lfrazier@ftc.gov; jchen2@ftc.gov

 **IT IS SO ORDERED**, this 12th day of July, 2010

_____

Cormac J. Carney

United States District Judge